UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of TECHNICA, LLC,<br><br>           Plaintiff,<br>v.<br>CAROLINA CASUALTY INSURANCE COMPANY, et. al.,<br><br>           Defendants. | Civil No. 08cv1673 JAH (CAB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. # 63]** |

## **INTRODUCTION**

Pending before this Court is the motion for summary judgment filed by defendants Carolina Casualty Insurance Company, Candelaria Corporation and Otay Group, Inc. ("defendants"). The motion has been fully briefed by the parties and oral argument has been entertained. After a careful consideration of the record as a whole, the pleadings submitted in support of, and in opposition to, defendants' motion, the oral argument of counsel presented at the hearing, and for the reasons set below, this Court GRANTS defendants' motion and enters judgment in favor of defendants on all claims presented in plaintiff's complaint.

//
//
//

## BACKGROUND[1]

Plaintiff Technica, L.L.C. ("Technica" or "plaintiff") filed a complaint on September 8, 2008, alleging two causes of action: (1) under the Miller Act, 40 U.S.C. §§ 3131, *et seq.*, against defendant Candelaria Corporation ("Candelaria") and Candelaria's payment bond surety, defendant Carolina Casualty Insurance Company ("CCIC"); and (2) for breach of contract against defendant Otay Group, Inc. ("Otay"). Plaintiff's claims stem from construction work performed for a federal construction project known as "ICE El Centro SPC - Perimeter Fence Replacement/Internal Devising Fence Replacement" located in El Centro, California ("the project"). The project consisted of replacement and construction of fencing at the El Centro United States Immigration and Customs Enforcement ("ICE") detention facility. Candelaria was the general contractor for the project and CCIC was Candelaria's surety on the payment bond.

Candelaria entered into a subcontract with Otay on December 12, 2007, in which Otay agreed to supply labor and equipment necessary to complete a portion of the project. Technica subsequently entered into an agreement with Otay concerning work on the project, the subject of which is one of the focal points of this lawsuit.[2] On June 6, 2008, Otay's subcontract with Candelaria was terminated for cause.

Candelaria and CCIC filed an answer to the complaint on October 23, 2008. Otay filed an answer to the complaint on October 29, 2008. On November 4, 2008, Candelaria and CCIC filed an amended answer along with a cross-claim against Otay. Otay filed an answer to the cross-claim on December 1, 2008. The cross-claim was subsequently dismissed upon the parties' joint motion. Candelaria and CCIC filed a second amended answer, with leave of court, on May 4, 2009, along with a counter-claim against Technica.

---

[1] These background facts are taken directly from the parties' separate statements of material fact. Unless otherwise noted, these background facts contain only those facts that are undisputed or the evidence presented establishes the fact.

[2] There is no dispute that Technica and Otay entered into an agreement in regards to the Candelaria project. However, defendants claim the agreement between Technica and Otay was for Technica to perform Otay's scope of work on the contract while plaintiff claims it only agreed to provide labor to Otay for the project.

Technica filed an answer to the counter-claim on May 26, 2009.

The instant motion for summary judgment was filed on September 28, 2009. Plaintiff filed its opposition to the motion on January 5, 2010. On January 6, 2010, the Court vacated the pretrial conference date of January 25, 2010, indicating that the conference would be rescheduled if necessary after resolution of the pending motion for summary judgment. Upon defendants' *ex parte* request filed January 8, 2010, the Court granted a continuance of the motion hearing and filing deadline for reply, rescheduling the hearing from January 19, 2010 to February 8, 2010. Oral argument was entertained on February 8, 2010. After hearing the argument of counsel, this Court took the motion under submission.

## DISCUSSION

**1.    Legal Standard**

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. "If the moving party has the burden of proof at trial (*e.g.*, a plaintiff on a claim for relief, or a defendant on an affirmative defense), the moving party must make a 'showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.' Thus, if the moving party has the burden of proof at trial, that party must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor.'" Pecarovich v. Allstate Ins. Co., 272 F. Supp.2d 981, 985 (C.D. Cal. 2003)(citing Calderone v. U.S., 799 F.2d 254, 259 (6th Cir. 1986) and quoting from Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)(internal citations

omitted)).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See* Schneider v. TRW, Inc., 938 F.2d 986, 990-91 (9th Cir. 1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(citing Anderson, 477 U.S. at 248).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See* Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ... ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

**2.   Analysis**

Candelaria and CCIC (collectively "defendants") move for summary judgment on plaintiff's first cause of action on the grounds that, because plaintiff does not hold a California Contractor's License, plaintiff is barred from bringing suit in California. Doc. # 63-1 at 5 (citing Cal.Bus.&Prof. Code § 7031(a)).[3]  In support of this contention, defendants claim that California law applies to this case. *See* Doc. # 63-1 at 4-5 (citing, *inter alia*, Continental Cas. Co. v. Schaefer, 173 F.2d 5, 7-8 (9th Cir. 1949)(holding the

---

[3] Defendants alternatively move for partial summary judgment, contending that plaintiff does not have a valid claim under the Miller Act since plaintiff financed Otay's labor on the project. *See* Doc. # 63-1 at 12. Because this Court ultimately grants defendants' motion for summary judgment on the grounds that plaintiff is barred from bringing suit in California based on California law, this Court does not address defendants' alternative motion for partial summary judgment on plaintiff's Miller Act claim against defendant Otay.

Erie doctrine applicable to issues of liability between general and subcontractors under the Miller Act where issue does not involve construction or application of a federal statute); Painters Local Union No. 171 v. Williams & Kelly, Inc., 605 F.2d 535, 539 (10th Cir. 1979)(payment bond surety not liable unless principal is liable)). Defendants explain that, although United States Supreme Court and Ninth Circuit precedent prohibits a state from requiring a general contractor to be licensed in the states when the contractor enters into a contract to perform work on a federal construction project, the prohibition does not apply to second tier subcontractors such as Technica. Id. at 6-7 (citing Leslie Miller, Inc. v. Arkansas, 352 U.S. 197 (1956)(general contractor not subject to Arkansas licensing statute because the state statute conflicted with the federal statute); Gartell Constr. Inc. v. Aubry, 940 F.2d 437 (9th Cir. 1991)(general contractors not subject to California licensing statute because the United States, in entering into the contract has already determined the general contractor meets the "responsibility" requirement found in 48 C.F.R. § 52.236-7 (1990)). Defendants claim that, here, because Technica contracted only with Otay for work on the project and did not contract or negotiate in any way with Candelaria or the United States, no responsibility determination concerning Technica was made by either the United States or Candelaria and thus no conflict between the government's "responsibility" provision and California's licensing statute can be found in this case. Id. at 7.

In addition, defendants contend that plaintiff cannot "escape the licensing requirement" by claiming it is simply a labor service provider and, thus, not a contractor for licensing purposes. Id. at 8 (citing Contractors Labor Pool, Inc. v. Westway Contractors, Inc., 53 Cal.App.4th 152 (1997). In Contractors Labor Pool, the court carved out a "labor provider exception" to the licensing requirement, finding:

> the law need apply only to those who actually perform or supervise the performance of construction services; it need not apply to those who only supply materials to be used by others or laborers who will be supervised by others. Thus, a person or company in the business of supplying equipment or hiring out laborers to be supervised by others is not deemed to act in the capacity of a contractor and is not required to have a license.

1  53 Cal.App. 4th at 164-65.  Defendants argue, here, the evidence reflects that Technica
2  actually performed and supervised their work on the project, pointing out that Steve
3  Webber, a Technica employee, supervised the day-to-day construction activities and "the
4  entirety of the work performed in furtherance of the Otay-Candelaria Subcontract was
5  performed by Technica employees" under Webber's supervision.  Doc. # 63-1 at 9-11
6  (citing Doc. # 63-3 ¶¶ 14, 15, 16).

7  In opposition, plaintiff contends that, while state law may apply to contract
8  interpretation, it does not control issues involving state law licensing requirements under
9  the Miller Act.  Doc. # 67 at 8.  According to plaintiff, "the cases relied upon by
10 defendants address only the narrow proposition that California rules of contract
11 interpretation should apply to determine the liability between the contracting parties" or
12 the cases did not involve federal question jurisdiction under the Miller Act.  Id. at 8-9.
13 Plaintiff claims that there is a "long-standing line of cases" in which courts have held "a
14 subcontractor's right to pursue a Miller Act action may not be qualified by any state law
15 licensing requirements."  Id. at 9 (citing Aetna Casualty & Surety Co. v. R.J. Struder &
16 Sons, 365 F.2d 997, 1000 (8th Cir. 1966)("Those state statutes which restrict the rights
17 of non-complying foreign corporations, although they may be enforced in federal courts
18 in diversity cases, should not and will not be enforced by the federal courts in Miller Act
19 cases.")).  Plaintiff further explains that the Aetna court analyzed prior decisions from the
20 Tenth Circuit, the District of Utah and the Eastern District of Tennessee and found each
21 reached the same conclusion:  state licensing statutes cannot bar a Miller Act claim in
22 federal court.  Id. at 10 (citing Hoeppner Constr. Co. v. U.S., 287 F.2d 108 (10th Cir.
23 1961); Bernadot v. Golden West Constr. Co., 194 F.Supp. 371 (D.Utah 1961); James F.
24 O'Neil Co. v. Malan Constr. Corp., 168 F.Supp. 255 (D.Tenn. 1958)).  Plaintiff points
25 out that neither Gartell nor Leslie Miller involved Miller Act claims and, as such, do not
26 support defendants' contention.  Id. at 10-11.

27 Plaintiff further points out that the court in Gartell found California's licensing laws
28 inapplicable where the law is preempted by federal law, noting that the policy underlying

the decision in Leslie Miller extends to subcontractors because they are necessarily included in the government's responsibility determination. Id. at 11 (citing Gartell, 940 F.2d at 440 & n.3). Plaintiff notes that several state supreme courts and the California Court of Appeal have recognized Gartell and Leslie Miller as preventing defendants from asserting a lack of state contractor's license as a defense to a Miller Act claim. Id. at 12-13 (citing Airport Constr. & Materials, Inc. v. Bivens, 649 S.W.2d 830 (Ark. 1983); Electric Constr. Co. v. Flickinger, 485 P.2d 547 (Ariz. 1971); Hunt Building Corp. v. Bernick, 79 Cal.App.4th 213, 218 (Cal.Ct.App. 2000)). In addition, in the event that defendants claim Gartell applies only to those contractors that have undergone a responsibility review process, plaintiff claims it has been designated by the government as "an approved HUB Zone, Section 8a[4] company" which renders it a responsible entity able to perform any contract it is awarded. Id. at 13.

In reply, defendants contend that plaintiff's preemption argument is unavailing because the conflict addressed in this case is not between the Miller Act and California's licensing statutes since "the Miller Act does not address or concern contractor eligibility requirements." Doc. # 71 at 1. Defendants claim "the precise question before this Court is whether the application of California's licensing statutes to Technica, a second-tier subcontractor, are preempted by the contractor responsibility requirements found in the Federal Acquisition Regulations Systems, 48 C.F.R. § 1.000 *et seq.* ("FARS"), which govern contractors and the construction project at issue." Id. at 1-2. According to defendant, "[t]he answer is a resounding no." Id. at 2.

Defendants explain that Technica overlooks the fact it is a second-tier contractor, not a prime contractor, or first-tier contractor, as the contractors in Gartell and Leslie Miller. Id. Defendants do not dispute that "applicable Federal law does govern responsibility determinations of prime contractors and first-tier contractors." Id. at 2-3.

---

[4] Plaintiff explains that "HUB Zone" and "Section 8a" designations are separate certifications issued by the United States Government under federal procurement law in regards to "set aside contracts." Doc. # 67 at 13 (citing 13 C.F.R. § 124.1 *et seq.*; 13 C.F.R. § 126.100 *et seq.*). Plaintiff points out that the government examines qualifications of the company, including its "potential for success," before issuing these certifications. Id.

However, defendants contend that FARS' responsibility requirements do not extend to second-tier contractors and, thus, do not apply to Technica at all, much less conflict with the application of California's licensing regulations. Id. at 3. Defendants point out that the single case cited by plaintiff that appears to support its position is an Eighth Circuit decision that is "easily distinguishable" from this case, in that the Eighth Circuit "misapplied the same case law relied upon by Technica." Id. (citing Aetna Casualty, 365 F.2d at 999). Therefore, defendants urge this Court to disregard the case "as conflicting with clear U.S. Supreme Court and Ninth Circuit authority." Id. at 3-4.

Defendants maintain that plaintiff is a "second-tier contractor" not subject to FARS regulation and dispute plaintiff's characterization of itself as a "subcontractor" for purposes of preemption. Id. at 5. According to defendants, the United States Supreme Court defines "subcontractor" as "'one who performs for and takes from the prime contractor a specific part of labor or material requirements of the original contract,'" a definition adopted by the Ninth Circuit. Id. (quoting Clifford E. MacEvoy Co. v. Calvin Tomkins Co., 322 U.S. 102, 109 (1944); Basich Bros. Constr. Co. v. U.S. f/u/o Turner, 159 F.2d 182, 183 (9th Cir. 1947)). Defendants explain that, here, Otay was a subcontractor to Candelaria pursuant to a subcontract agreement between them. Id. Technica performed work for Otay under a separate agreement regarding labor and materials under Otay's subcontract. Id. Thus, because Technica did not perform work for Candelaria nor take a specific part of Candelaria's contractual labor and material requirements, defendants contend Technica is not a subcontractor under FARS. Id. Defendants accordingly argue that no conflict exists between California law and FARS in this case and, therefore, California's licensing requirements are not preempted. Id. at 6.

Defendants also claim that plaintiff's assertions concerning its certification as "HUB Zone" and "Section 8a" is "completely distort[ed]" and, when analyzed properly, has no bearing on qualifications to perform contracts as plaintiff suggests. Id. at 6-7. Defendants assert that "HUB Zone" certification means the company is located in a distressed area and "Section 8a" means only that the company "'be at least 51 percent owned, controlled,

managed and operated on a daily basis by one or more socially and economically disadvantaged persons,'" neither of which has any bearing on the qualification of a business to perform any particular contract. Id.[5]  Defendants note that FARS responsibility is a "contract-specific not a contractor-specific determination." Id. at 7 (citing 48 C.F.R. § 9.105-2(a)(2) ("The contracting officer's signing of a contract constitutes a determination that the prospective contractor is responsible with respect to that contract.")(emphasis omitted)). Defendants point out that, here, neither Candelaria nor the federal government made any responsibility determination regarding Technica. Id. Thus, defendants contend that plaintiff's "HUB Zone" and "Section 8a" certifications are simply irrelevant to this case. Id. at 8.

Finally, defendants point out they have provided sufficient evidence to support their claim that plaintiff was not just a labor provider which would entitle it to exemption from licensing under Contractors Labor Pool, 53 Cal.App. 4th at 61. Id. at 9-10. In support, defendants point to the evidence presented that establishes plaintiff actually performed the project's construction work, contending the evidence clearly demonstrates plaintiff does not fall under this exception. Id. at 10. Defendants note that, despite plaintiff's averments concerning supervision by Otay and Candelaria, Webber, plaintiff's own employee, admitted that he directed the day-to-day activities of the project. Id. Defendants claim plaintiffs' contention regarding the chain of command at the project "would result in the unwelcome result of all first-tier subcontractors and lower tier subcontractors not having to be properly licensed simply because a general contractor has the right, by contract, to direct the overall project." Id. Defendants point out that each tier supervises its own work, thus requiring an entity to be licensed under California's licensing statutes. Id. at 10-11.

After a careful review of the evidence presented, this Court finds that defendants have met their initial burden of demonstrating there is no genuine issue of material fact

---

[5] Defendants cite, in support of this contention, to http://www.sba.gov/hubzone/section05b.htm and http://www.da.usda.gov/smallbus/8a.htm. See Doc. # 71 at 6 n.1, 7 n.3.

1 to be resolved as to whether plaintiff is barred from bringing suit in California based on
2 its lack of a California Contractor's License. *See* Pecarovich, 272 F. Supp.2d at 985. The
3 evidence shows that Technica is not a subcontractor or simply a labor provider as plaintiff
4 avers. The evidence also shows that Webber, a Technica employee, supervised the day-to-
5 day construction activities at the project, in that he testified:

> I managed that project. I was general foreman over that project. Gary Arnold was the superintendent for the project but he was – he was pulled between two different locations, New Mexico and that area. And when he wasn't there, I'd always talk to him via phone or email, but I would carry out what he wanted done.

9 Doc. # 63-2 ¶ 15, Exhs. F, K. Gary Arnold, an Otay employee, confirmed Webber's role
10 as supervising the day-to-day operations, and further testified that Technica employees
11 performed 100% of Otay's work on the project. Id. ¶ 16, Exh. I. Thus, the evidence
12 supports defendants' claim that Technica was not simply a labor provider which would
13 exempt it from California's licensing requirements pursuant to Contractor's Labor Pool,
14 53 Cal.App. 4th at 61. The evidence further supports defendants' claim that Technica was
15 not a subcontractor on the project based on the undisputed fact that it did not enter into
16 a contract with Candelaria or the government, and the evidence establishes no
17 responsibility determination was made concerning Technica's ability to perform work on
18 the contract. *See* id. ¶ 17, Exh. L. This Court further finds that plaintiff fails to set forth
19 facts sufficient to rebut the evidence presented by defendants. *See* Anderson, 477 U.S.
20 at 256. In addition, because the parties do not dispute that Technica does not have a
21 California Contractor's License, this Court finds plaintiff is barred from suing in
22 California. *See* Cal.Bus.&Prof. Code § 7031(a). Therefore, defendants are entitled to
23 judgment as a matter of law on all claims presented in the instant complaint. Accordingly,
24 plaintiff's motion for summary judgment is GRANTED.
25 //
26 //
27 //
28 //

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that defendants' motion for summary judgment [doc. # 63] is **GRANTED**. The Clerk of Court shall enter judgment in favor of defendants on all claims presented in the instant complaint.

Dated: June 28, 2010

JOHN A. HOUSTON
United States District Judge