1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES, for the use of:              CASE NO. 08-CV-01673-H (KSC)
     TECHNICA, LLC,
12                                               **ORDER REGARDING**
                                   Plaintiff,    **AFFIDAVIT FILED PURSUANT**
13            vs.                                **TO 28 U.S.C. §§ 455 AND 144**

14   CAROLINA CASUALTY INSURANCE
     COMPANY, et al. CANDELARIA
15   CORPORATION; OTAY GROUP, INC.;
     and DOES 1 through 10, inclusive,
16
                                   Defendants.
17

18           On March 19, 2012, Defendants' counsel, Robert J. Berens, filed an affidavit pursuant

19   to 28 U.S.C. §§ 144 and 455, alleging this Court's bias or prejudice against Defendants and

20   their counsel.  (Doc. No. 153.)  Counsel's allegations stem from the Court's rulings in United

21   States ex rel. Ramona Equipment Rental, Inc. v. Carolina Casualty Insurance Co., et al., 08-

22   CV-1685-H (MDD) ("Ramona"), and United States ex rel. Technica, LLC v. Carolina Casualty

23   Insurance Co., et al., 08-CV-1673-H (KSC) ("Technica").  For the following reasons, the Court

24   denies the request for recusal as without merit under section 455 and as legally insufficient

25   under section 144.

26   ///

27   ///

28   ///

**Background**

**I.     United States ex rel. Ramona v. Carolina Casualty Insurance Co., et al.**

The <u>Ramona</u> Miller Act action and related claims came to a nonjury trial before the Court.  (<u>Ramona</u>, Doc. No. 112.)  Plaintiff's claims in the lawsuit arose from a federal construction project—the El Centro ICE Detention Center—for unpaid equipment rentals supplied by Ramona to Otay, a subcontractor of the general contractor, Candelaria Corporation.  (<u>Ramona</u>, Doc. No. 112.)  On August 31, 2011, the Court issued a detailed memorandum decision in favor of Plaintiff Ramona Equipment Rental Inc. and against Defendants Carolina Casualty Insurance Company, Candelaria Corporation, and Otay Group, Inc. in the amount of $178,686.56 plus interest, attorney's fees, and costs as allowed by law. (<u>Ramona</u>, Doc. No. 112.)  In its memorandum decision, the Court complimented the parties' presentation of the evidence.  (<u>Ramona</u>, Doc. No. 112.)

Following the trial, the Court issued a briefing schedule for its determination of interest and attorney's fees.  (<u>Ramona</u>, Doc. No. 113.)  Concerning interest, the parties submitted their proposed prejudgment interest calculations.  (<u>Ramona</u>, Doc. Nos. 114, 117.)  The Court did not immediately enter judgment and instead permitted the parties to oppose entry of judgment, if desired.  (<u>Ramona</u>, Doc. No. 119.)  After due consideration, the Court awarded Plaintiff $106,686.56 plus $106,516.64 as interest for a total sum of $285,203.20, plus attorney's fees. (<u>Ramona</u>, Doc. No. 119.)  The Court attached a proposed order to the order regarding interest, to be issued absent opposition from the parties.  (<u>Ramona</u>, Doc. No. 119.)  Defendants objected to the timing of the Court's entry of judgment, requesting the Court's entry of judgment be delayed until after attorney's fees had been determined by the Court.  (<u>Ramona</u>, Doc. No. 121.) Therefore, the Court delayed entry of judgment and directed Defendants to file an opposition to the amount of attorney's fees requested by Plaintiff.  (<u>Ramona</u>, Doc. Nos. 122.)

On November 10, 2011, after carefully considering the parties' arguments, papers, and oral argument, the Court awarded Plaintiff Ramona reasonable attorney's fees in the amount of $54,571.25 attributable to James Crosby, Plaintiff Ramona's current counsel, and $59,510.03 attributable to Kevin Carlin, Plaintiff Ramona's former counsel, for the total of

$114,081.28, substantially less than Plaintiff's requested amount.  (Ramona, Doc. No. 133.) On November 10, 2011, the Court entered judgment in favor of Plaintiff and against Defendants in the amount of $399,284.48.  (Ramona, Doc. No. 134.)  The award included the unpaid equipment rental of $175,658.57; simple, not compounded, contractual interest of $106,516.64; and attorney's fees of $114.81.28.  (Ramona, Doc. No. 134.)

On December 1, 2011, Defendants filed a motion to alter judgment under Federal Rules of Civil Procedure 59(e) and 60(b).  (Ramona, Doc. No. 136.)  Defendants moved to exclude contractual interest from the amount awarded to Plaintiff Ramona.  (Ramona, Doc. No. 136.) After considering the parties' arguments, on December 30, 2011 the Court denied Defendants' motion to alter or amend the judgment, concluding that Defendants had not met their burden of showing legal error under Rule 59(e) or substantive error of law and fact under Rule 60(b) that would warrant altering or amending the judgment in the case.  (Ramona, Doc. No. 142.)

On January 23, 2012, Defendants filed a motion to stay the judgment pending appeal and requested the Court to not order a supersedeas bond.  (Ramona, Doc. No. 145.)  The Court granted Defendants' request for stay of the judgment but required Defendants to post a supersedeas bond pursuant to Local Rule 65.1.2.  (Ramona, Doc. No. 154.)  Defendants then sought clarification of the Court's order, requesting that the Court confirm the amount to be posted.  (Ramona, Doc. No. 155.)  On February 17, 2012, the Court clarified the order for Defendants to post a supersedeas bond for $399,284.49, the amount of the judgment, not the amount requested by Plaintiff of $499,105.60.  (Ramona, Doc. Nos. 156, 157.)

**II.     United States ex rel. Technica v. Carolina Casualty Insurance Company, et al.**

The Court was randomly assigned to Technica on March 12, 2012, after the previously assigned judge recused from the matter.  (Technica, Doc. No. 144.)  No party had filed a notice of related cases in either Technica or Ramona, as required by  Local Civil Rule 40.1(f).  The Court retained the previously scheduled pretrial conference set for March 14, 2012.[1]

---

[1] The Court notes that the Final Pretrial Conference had been continued from January 24, 2010, to October 3, 2011, to December 5, 2011, to February 6, 2012, to February 16, 2012, to March 15, 2012. (Technica, Doc. Nos. 113, 118, 123, 141, 143.)

08cv1673

1    (Technica, Doc. No. 143.)  The Court ordered the parties to meet and confer, and submit a joint

2    proposed pretrial order before the pretrial conference.  (Technica, Doc. No. 149.)  The Court

3    also ruled on the fully briefed and submitted motion for leave to file a third amended answer

4    and counterclaim.  (Technica, Doc. Nos. 124, 146.)  At a March 15, 2012 hearing, in light of

5    the Court's notice of counsel's intent to file an affidavit under 28 U.S.C. §§ 144 and 455 and

6    the parties' inability to agree on a proposed pretrial order in accordance with Local Rule

7    16.1(f)(6), the Court postponed the pretrial conference until further notice.  (Technica, Doc.

8    No. 152.)

9         On March 19, 2012, counsel for Defendants Candelaria Corporation, Carolina Casualty

10   Insurance Company, and Otay Group, filed a sworn affidavit pursuant to 28 U.S.C. §§ 144 and

11   455.[2] (Technica, Doc. No. 153.)  Counsel also filed a certificate of counsel of record certifying

12   that the affidavit was filed in good faith.  (Technica, Doc. No. 154.)  Counsel asserts that the

13   Court is biased or prejudiced against Candelaria or against him personally based on the Court's

14   rulings in Ramona and Technica.  (Technica, Doc. No. 153.)

15                                          **Discussion**

16        Requests for recusal are governed by 28 U.S.C. §§ 144 and 455.  When a court

17   considers a motion brought under section 144, the court should evaluate whether to "grant

18   recusal pursuant to [section 455]," and if it determines that recusal is inappropriate under

19   section 455, proceed to "determine the legal sufficiency of the affidavit filed pursuant to 144."

20   United States v. Sibla, 624 F.2d 864, 868 (9th Cir. 1980).

21   **I.     Recusal Under Section 455**

22        **A.     Legal Standard for Section 455**

23        Section 455 provides, "Any . . . judge . . . shall disqualify himself in any proceeding in

24   which his impartiality may reasonably be questioned."  28 U.S.C. § 455.  It continues, "He

25   shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a

26   ────────────────

27        [2] Carolina Casualty Insurance Company has filed a motion under 28 U.S.C. § 455 before.  See Carolina
     Casualty Ins. Co. v. Helsley, 1:10-cv-916-LJO-MJS, 2010 WL 4955547 (E.D. Cal. Nov. 30, 2010); Carolina

28   Casualty Ins. Co. v. Helsley, 1:10-cv-916-LJO-MJS, 2010 WL 472433 (E.D. Cal. Nov. 15, 2010).

party." Id.  Therefore, in evaluating a section 455 motion, the operative test is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality may reasonably be questioned." United States v. Hernandez, 109 F.3d 1450, 1453-54 (9th Cir. 1997); see also Pesnell v. Arsenault, 543 F.3d 1038, 1043 (9th Cir. 2008); United States v. Holland, 519 F.3d 909, 914 (9th Cir. 2008); Yagman v. Republic Ins., 987 F.2d 622, 626 (9th Cir. 1993); Mayes v. Leipziger, 729 F.2d 605, 607 (9th Cir. 1985); United States v. Nelson, 718 F.2d 315, 321 (9th Cir. 1983).  In Liteky v. United States, 510 U.S. 540 (1994), the Supreme Court analyzed the bases for recusal under section 455 and held that judicial rulings rarely constitute a valid basis.  Liteky, 510 U.S. at 555; accord Velazquez v. Demore, 59 Fed. Appx. 984 (9th Cir. 2003).  The Court explained,

> First, judicial rulings almost never constitute a valid basis for a bias or partiality motion.  In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.  Almost invariably, they are proper grounds for appeal, not recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

Liteky, 510 U.S. at 555; see also Pesnell, 543 F.3d at 1044.  In Liteky, the Supreme Court held as insufficient a recusal motion based on the district court's rulings, statements, and conduct during trial, including cutting off testimony, exhibiting an "anti-defendant tone," and denying motions subsequent to trial.  Liteky, 510 U.S. at 556.  The Court stated, "All these grounds are inadequate . . . .  They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses." Id.  The Court further explained that "[a]ll occurred in the course of judicial proceedings and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." Id.

///

///

08cv1673

**B.      Affidavit Is Without Merit Under Section 455**

In light of the applicable legal standard, the Court turns to whether the reasons provided in counsel's affidavit would lead a reasonable person with knowledge of the facts of the case to question the Court's impartiality.  See Hernandez, 109 F.3d at 1453-54.  Based on the record, the Court concludes a reasonable person would not question the Court's impartiality.

**1.      Court's Rulings During Ramona Trial**

Counsel challenges the Court's evidentiary rulings made during the bench trial in Ramona.  (Technica, Doc. No. 153, ¶ 11.)  Counsel alleges that this Court did not allow him to voir dire a witness concerning the evidentiary foundation for business records, the rental equipment invoices.  (Technica, Doc. No. 153, ¶ 8; see Ramona, Doc. No. 148, at 131-37.) Instead, the Court suggested that counsel challenge the evidentiary foundation for the witness's testimony on cross-examination.  (Ramona, Doc. No. 148, at 131 ll. 17-18.)  Counsel also argues that the Court, over his objection, permitted Plaintiff to elicit expert opinion testimony through its lay witness at trial. (Technica, Doc. No. 153, ¶ 9.)  Further, counsel argues that the Court, over his objection, permitted Plaintiff to reopen its direct examination of a witness concerning the compounded interest charges from the unpaid rental equipment charges.[3] (Technica, Doc. No. 153, ¶ 9.)

As a preliminary matter, recusal based on these allegations is improper because the alleged misconduct derives from conduct in the course of the proceeding, not from an extrajudicial source or a deep-seated antagonism toward Defendants. See Liteky, 510 U.S. at 555-56.  Here, counsel argues that the Court is prejudiced or biased, as demonstrated by judicial rulings that were unfavorable to counsel's client, not by any facts showing "deep-seated and unequivocal antagonism." Liteky, 510 U.S. at 555-56. Counsel also has not alleged that the rulings were biased or prejudiced by an extrajudicial source. See id. Consistent with the law, the Court concludes that counsel's allegations are based on judicial rulings and trial

---

[3]Specifically, counsel objected to a document received late, ultimately not admitted into evidence. (See Ramona, Doc. No. 149, at 115.)

1  administration efforts—inadequate grounds for recusal.  Id. 555-56.  Therefore, counsel's

2  allegations that the Court's procedural rulings constitute bias are inadequate.

3          **a.**      **Counsel's Request to Interrupt Witness's Testimony**

4          Even if counsel's allegations were not insufficient because they challenge judicial

5  rulings, a reasonable and objective observer would not question the Court's impartiality in

6  making these rulings.  See Hernandez, 109 F.3d at 1453-54.  With respect to counsel's

7  allegations that the Court did not allow him the opportunity to interrupt Plaintiff's witness's

8  direct testimony in the bench trial so that he could voir dire the witness, the record reflects that

9  the Court did permit counsel to challenge the evidentiary foundation for the witness's

10  testimony.  (See Technica, Doc. No. 153, ¶ 9.)  In response to counsel's request to interrupt

11  direct examination to voir dire the witness in the bench trial, the Court responded that counsel

12  could voir dire the witness during his cross-examination.  (See Ramona, Doc. No. 148, at 131

13  ll. 17-18.)  Because the Court permitted counsel to challenge the evidentiary foundation on

14  cross-examination, a reasonable, objective observer would not question the Court's impartiality

15  but would conclude the Court's decision that counsel challenge the foundation on cross-

16  examination of the witness to be fair and unbiased.[4]  See Hernandez, 109 F.3d at 1453-54.

17          **b.**      **Counsel's Objection to Plaintiff's Witness**

18          Additionally, a reasonable observer would not have questioned the Court's impartiality

19  when the Court permitted Plaintiff to request its lay witness to testify based on particularized

20  knowledge gained from his experiences.  (See Ramona, Doc. No. 149.)  After Defendants'

21  counsel's objection, Plaintiff's counsel maintained that the witness's testimony was not expert

22  testimony, and the Court agreed.  (Ramona, Doc. No. 149.)  The Advisory Committee Notes

23  specifically provide that Federal Rule of Evidence 701 does not prohibit lay witnesses from

24  testifying based on particularized knowledge gained from their own experiences.  See Fed. R.

25  Evid. 701 Advisory Comm. Notes ("For example, most courts have permitted the owner or

26

27      [4] The Court notes that Defendants did not move to strike the testimony or the exhibits either during

28  cross-examination or later during the trial.  (See Doc. Nos. 149-51.)

officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert.  Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.").

Consistent with Rule 701, the witness's testimony was based on his particularized knowledge gained from years of experience within his field, and his testimony was both helpful and relevant.  (See Ramona, Doc. No. 149.)  The witness, Plaintiff Ramona's president and chief executive officer Mr. John Souza, testified on the reasonableness of the re-rental charges based on his experience in the field.  (Ramona, Doc. No. 149, at 98-162.)  Based on his experience, Mr. Souza testified about the charges Ramona received from the third-party suppliers and the charges Ramona issued to Otay for the re-rented equipment.  (Ramona, Doc. No. 149, at 107-13.)  He testified that the re-rental charges were below the norm for re-rental rates and were reasonable.  (Ramona, Doc. No. 149, at 98-162.)  He testified that the re-rental rates resulted in a profit margin of 15.60% or about $13,000.  (Ramona, Doc. No. 149, at 98-162.)  Additionally, Otay never objected to the re-rental charges during the project.  (See Ramona, Doc. No. 149.)

Because Mr. Souza's testimony was based on his experience in the field, relevant, and helpful to the Court, his testimony was admissible under the Federal Rules of Evidence.  See United States v. Goodheim, 686 F.2d 776, 779 (9th Cir. 1982) (quoting Fed. R. Evid. 701) ("Opinion testimony by lay witnesses is admissible if it is '(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.'"); see also Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1222 (11th Cir. 2003) ("Tampa Bay's witnesses testified based upon their particularized knowledge garnered from years of experience within the field.  Their testimony was helpful to the district judge and relevant to the issues presented in the case."); see also Meaux Surface Prot., Inc. v. Fogleman, 607 F.3d 161, 168-69 (5th Cir 2010) (holding

that the district court did not abuse its discretion in permitting chief financial offer of the plaintiff to testify about lost profits as a lay witness because corporate officer was intimately familiar with the company's financial performance); Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 80 (3d Cir. 2009) ("[W]e have consistently required that lay testimony requiring future projections of a business or operation come from someone who has intimate and thorough knowledge of the business gathered from either a lengthy tenure or position of authority."); Walton v. Nalco Chem Co., 272 F.3d 13 (1st Cir. 2001); Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256 (2d Cir. 1995); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993) (holding there to be no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business).  Under the circumstances, a reasonable, objective observer would not view the Court's decision to overrule Defendants' counsel's objection as an indication of bias or prejudice.  See Hernandez, 109 F.3d at 1453-54.  Instead, a reasonable, objective observer would conclude that Mr. Souza's testimony about the re-rental charges was rationally based on his intimate knowledge of the business and helpful to the Court in determining a fact in issue.  See Fed. R. Evid. 701.  Therefore, counsel's contention that the Court's ruling on permitting the lay testimony was biased is without merit.

### c.     Counsel's Objection to Summary Demonstrative

Finally, a reasonable observer would not question the Court's impartiality in its decision to permit the reopening of direct examination of a witness to testify about the contractual compound interest on the balance of the unpaid rental equipment charges. (Technica, Doc. No. 153, ¶ 9.)  The Court ultimately concluded that Plaintiff was not entitled to compound interest but only to simple interest under the terms of the rental agreements already in evidence.  (See Doc. No. 112; Exs. 5, 7-96.)  Post trial, the Court requested supplemental briefing from both parties on the calculations of simple interest.  (See Ramona, Doc. No. 113.)

During trial, the parties testified about rental charges, payments made, payments received, and interest charged.  (Ramona, Doc. No. 149.)  Plaintiff argued that it was entitled

to compound interest, instead of simple interest, on the unpaid equipment rental invoices. (See, e.g., Ramona, Doc. No. 151, at 41-43.) The Court received into evidence numerous Otay equipment rental agreements and invoices. (See Ramona, Exs. 5, 7-96.) Each rental agreement stated, "Customer agrees to pay on each delinquent account a service charge of 1½% per month." (Ramona, Doc. No. 112, at 5; Exs. 5, 7-96.) Plaintiff's counsel represented that the document to which Defendants objected listed the finance invoices—invoices including the contractual service charge—that were not in evidence. (See Ramona, Doc. No. 149, at 115-17; Exs. 5, 7-96) In listing and totaling the finance invoices, Plaintiff's counsel represented that the summary document essentially applied the contractual 1½% interest rate, compounded, to the sum of the admitted rental equipment invoices. (Ramona, Doc. No. 149, at 115-16.) The Court stated that it would use the document as a demonstrative rather than admitting it into evidence. (Ramona, Doc. No. 149, at 116.) Specifically, the Court stated, "How about this. I'll permit him to testify and I'll use this as a demonstrative. So it's not technically received in evidence. He can testify about it." (Ramona, Doc. No. 149, at 121 ll. 17-20.) The Court then reiterated during the testimony, "I'm just going to use this as a demonstrative." (Ramona, Doc. No. 149, at 123 ll. 22-23.)

Federal Rule of Evidence 611(a):

> provides the authority for a trial judge to allow the use of summary charts and exhibits based on evidence adduced at trial. . . . [M]any opinions have cited that rule as authorizing summaries of trial evidence, even though the placement and language of Rule 1006 indicates that it is intended to provide a substitute for presentation at trial of voluminous evidence and an escape from the Best Evidence Rule. Rule 611(a) is much more apt authority for summaries of evidence that has already been presented at trial. The rule plainly gives the trial judge leeway to permit or to disallow various forms of summary evidence in the interests of promoting a fair trial.

3 Stephen Saltzburg, et al., Federal Rules of Evidence Manual 611-6 (10th ed., 2011); see United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980) ("[W]e reject Gardner's contention that the defense was unduly prejudiced by the Government's use of a chart summarizing the assets, liabilities and expenditures of the appellant. . . . The chart was a summary of facts and calculations which were in evidence. . . . The use of the chart in court contributed to the clarity

of the presentation to the jury, avoided needless consumption of time and was a reasonable method of presenting the evidence.  It was well within the discretion of the court to permit this use pursuant to Fed. R. Evid. 611(a)."); see also United States v. Stiger, 371 F.3d 732 (10th Cir. 2004) (stating that charts were not admissible under Rule 1006 because they summarized expert opinion rather than voluminous evidence not admitted at trial, but the charts were admissible under Rule 611(a) because they assisted the jury in putting together the testimony in a complex trial); United States v. Posada-Rios, 158 F.3d 832 (5th Cir. 2000) (holding no abuse of discretion where the government was permitted to display throughout the trial a timeline and organizational charts because the charts, although not admitted into evidence, were pedagogical devices, and the jury was repeatedly instructed as to their proper purpose); United States v. Johnson, 54 F.3d 1150 (4th Cir. 1995).

Consistent with Federal Rule of Evidence 611(a), the Court properly used the document summarizing the invoices as a demonstrative.  (See Doc. No. 149, at 115-21.)  The summary exhibit was based on evidence adduced at trial—the rental equipment invoices and the contractual interest rate, compounded.  (See Doc. No. 149, at 115-21.)  The document served to assist the Court in determining the amount due if the contractual interest were compounded and applied to the sum of the already admitted rental agreement invoices.[5]  (See Doc. No. 149, at 115-21, Exs. 5, 7-96.)  Rule 611(a) provides a judge leeway to permit or disallow various forms of summary evidence.  Saltzburg, supra, 611-16.  As a result, the Court's decision to permit the document's use as a demonstrative was reasonable and did not demonstrate bias. See Litkey, 510 U.S. at 555-56.

### 2. Court's Rulings Post-Ramona Trial Regarding Attorney's Fees

Counsel criticizes the Court's briefing schedule for attorney's fees and the Court's rulings, arguing that they demonstrate bias or prejudice against Defendants or Defendants' counsel.  (Ramona, Doc. No. 145.)  As a preliminary matter, recusal based on these allegations is improper because the alleged misconduct derives from conduct in the course of the

---

[5] Ultimately, the Court did not award compound interest.  (Ramona, Doc. No. 112.)

proceeding and the Court's rulings, not from an extrajudicial source or deep-seated favoritism or antagonism.  See Liteky, 510 U.S. at 555-56.  In accordance with Liteky, the allegations are an insufficient basis for the Court's recusal.  See id.

Moreover, a reasonable objective observer would not question the Court's impartiality in its decision to request Plaintiff to file supplemental briefing and to award attorney's fees to Plaintiff as the prevailing party in the Miller Act case.  Following issuance of its memorandum decision, the Court issued a scheduling order on August 31, 2011, requesting Plaintiff to submit "the amount, if any, of the attorney's fees." (Ramona, Doc. No. 113.)  In the order, the Court also provided Defendants an opportunity to oppose the attorney's fees. (Ramona, Doc. No. 113.)  Plaintiff submitted its total claimed attorney's fees to be $173,113.44. (Ramona, Doc. No. 116.)  In doing so, Plaintiff complied with the Court's order that requested the total amount of attorney's fees. (See Ramona, Doc. No. 113.)

After the submission, the Court ordered supplemental briefing and requested Plaintiff's counsel to submit an itemized statement with the amount paid to Plaintiff's current counsel and previous counsel. (Ramona, Doc. No. 120.)  When Defendants requested the opportunity for opposition to the itemization, (Ramona, Doc. No. 121), the Court promptly—within the same day—granted Defendants' request to oppose by the date selected by defense counsel. (Ramona, Doc. No. 122.)  Thereafter, Plaintiff filed a declaration by Plaintiff's counsel, Mr. Crosby, supporting the itemization of attorney's fees. (Ramona, Doc. No. 123.)  The Court received Defendants' opposition to Plaintiff's claimed attorney's fees. (Ramona, Doc. No. 124.)  Defendants argued that Mr. Crosby's declaration did not provide evidentiary support or an authentication of the attorney's fees attributed to Mr. Carlin, Plaintiff's prior attorney. (Ramona, Doc. No. 124.)

After considering Defendants' opposition, the Court ordered Plaintiff to provide a declaration of Plaintiff's first attorney, Mr. Carlin. (See Ramona, Doc. No. 126.)  Defendants requested the opportunity to oppose the itemization, (Ramona, Doc. No. 128), and the Court promptly—within the same day—granted Defendants' request to oppose the itemization.

1    (Ramona, Doc. No. 129.)   The Court also scheduled a hearing on the matter.   (Ramona, Doc.

2    No. 131.)  On November 10, 2011, the Court heard oral argument on the issue.  (Ramona, Doc.

3    No. 132.)    The Court granted Plaintiff's motion for attorney's fees in the amount of

4    $114,081.28, significantly less than the amount requested by Plaintiff.  (See Ramona, Doc.

5    Nos. 116, 133.)

6        In evaluating counsel's claims, the Court notes that counsel's citation to Hensley v.

7    Eckerhart, 461 U.S. 424 (1983), mischaracterizes the holding.  (See Technica, Doc. No. 153.)

8    Hensley states that a "party seeking an award of fees should submit evidence supporting the

9    hours worked and rates claimed."  Hensley, 461 U.S. at 433.  It further states, "Where the

10   documentation of hours is inadequate, the district court may reduce the award accordingly."

11   Id.; see also Aguirre v. L.A. Unified Sch. Dist., 461 F.3d 1114, 1121 (9th Cir. 2006) ("Hensley

12   does not strip the district court of its discretion in awarding fees, nor does it eliminate

13   flexibility in granting them.");  Ramon v. Kern High Sch. Dist., 98 Fed. Appx. 627, 629 (9th

14   Cir. 2004) (stating that a court's decision to reduce hours was within its discretion but not

15   indicating that a district court must do so);  In re Wash. Public Power Supply Sys. Secs. Litig.,

16   19 F.3d 1291, 1305 (9th Cir. 1994) (stating that a district court could reduce the award but not

17   requiring a district court to do so);  Sorenson v. Mink, 239 F.3d 1140, 1146 (9th Cir. 2001)

18   (citing Hensley, 461 U.S. at 1146).  The Supreme Court does not require district courts to

19   reduce the award but provides district courts the discretion to do so.  See id.; see also Aguirre,

20   461 F.3d at 1121 (explaining that Hensley does not deprive the court of discretion in awarding

21   attorney's fees); Ramon, 98 Fed. Appx. at 629; In re Wash. Public Power, 19 F.3d at 1305;

22   Sorenson, 239 F.3d at 1146.  The Supreme Court stated that "[t]here is no precise rule or

23   formula" governing attorney's fees and "[t]he court necessarily has discretion in making this

24   equitable judgment."   Hensley, 461 U.S. at 436-37.   Therefore, a reasonable, objective

25   observer would not question the Court's impartiality in its award of attorney's fees.  The

26   Supreme Court provided the Court the discretion to determine attorney's fees, and the Court

27   exercised its discretion in awarding attorney's fees to the prevailing party in this Miller Act

28

1   case. 40 U.S.C. § 3131; see F.D. Rich Co. v. United States ex rel. Indus. Lumber Co. Inc., 417

2   U.S. 116, 127 (1974); Travelers Indem. Co. v. United States ex rel. Western Steel Co., 362

3   F.2d 896, 899 (9th Cir. 1996); see also Hensley, 461. U.S. at 433.

4        Additionally, the Court's actions would not lead an objective observer to conclude that

5   the Court was partial toward Plaintiff.  Plaintiff complied with the Court's order, and the Court

6   determined additional briefing necessary for resolution of the attorney's fees issue.  (See

7   Ramona, Doc. Nos. 120, 126.)  Further, the Court's mode of providing Defendants the

8   opportunity to oppose the attorney's fees would not lead a reasonable, objective observer to

9   question the Court's impartiality.  The Court provided Defendants the opportunity to oppose

10  Plaintiff's submissions in writing and at oral argument.  (See Ramona, Doc. Nos. 122, 129,

11  132.)  Therefore, an objective, reasonable observer would not view the Court's actions as

12  evincing bias or prejudice against Defendants.  See Fed. R. Civ. P. 54(d)(2)(C).

13       With respect to the Court's ultimate award of attorney's fees, the Court's award did not

14  demonstrate a bias or prejudice in favor of Plaintiff.  The Court awarded Plaintiff significantly

15  less than the amount Plaintiff requested—$114,081.28 instead of $173,113.44. (Ramona, Doc.

16  Nos. 116, 133.)  A reasonable, objective observer would view the ultimate award as the

17  Court's independent evaluation of the attorney's fees, substantially less than that requested by

18  Plaintiff and therefore would not question the Court's impartiality in its award of attorney's

19  fees.  (See Ramona, Doc. No. 133.)

20       Considering Defendants' arguments regarding attorney's fees as a whole, a reasonable,

21  objective observer would not question the Court's impartiality.   Ultimately, the Court

22  requested supplemental briefing in the exercise of its discretion in order to properly and fairly

23  evaluate the issue, granted Defendants' requests to file oppositions, held a hearing at which

24  both parties were adequately heard, and awarded less than the amount of attorney's fees

25  requested by Plaintiff.  (See Ramona, Doc. Nos. 113, 120-22, 126, 128-29, 133.)

26       Furthermore, the issues raised by counsel may be suitable for appeal but are an

27  improper basis for recusal.  See Liteky, 510 U.S. at 555 ("Almost invariably, [judicial rulings]

28

are proper grounds for appeal, not for recusal."). An objective, reasonable observer would view the Court's actions as reasonable and not demonstrating bias against Defendants or Defendants' counsel. Therefore, recusal by the Court on these grounds is improper.

### 3. Court's Post-Trial Rulings in <u>Ramona</u> on 59(e) and 60(b) Motion

Counsel additionally challenges the Court's ruling on Defendants' motion to alter or amend the judgment, requesting the Court to strike the award of 1½% simple interest on the theory that Plaintiff waived its right to collect contractual interest. (<u>See</u> <u>Technica</u>, Doc. No. 153.) As a preliminary matter, counsel's arguments about the Court's conduct hinge on judicial rulings, rather than on extrajudicial sources or deep-seated antagonism or favoritism. <u>See</u> <u>Liteky</u>, 510 U.S. at 555-56. In accordance with <u>Liteky</u>, this is an insufficient basis for a recusal request. <u>Id.</u> Further, counsel challenges the Court's administration of orders and deadlines. (<u>Technica</u>, Doc. No. 153.) Counsel challenges the Court's order and judicial administration efforts, an improper basis for recusal. <u>Liteky</u>, 510 U.S. at 555-56. Therefore, the Court's order does not evince bias of the type explained by <u>Liteky</u> as a proper basis for recusal. <u>See</u> <u>id.</u>

Nevertheless, a reasonable, objective observer would not question the Court's impartiality in denying Defendants' post-trial motion under Rules 59(e) and 60(b). (<u>See</u> <u>Ramona</u>, Doc. No. 142.) Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its judgment within twenty-eight days after entry of the judgment. <u>Allstate Ins. Co. v. Herron</u>, 634 F.3d 1101, 1111 (9th Cir. 2011). Amending a judgment after its entry is "an extraordinary remedy which should be used sparingly." <u>McDowell v. Calderon</u>, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam). Because "specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." <u>Id.</u> Rule 59(e) motions may be granted for four reasons: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the

amendment is justified by an intervening change in controlling law." <u>Allstate</u>, 634 F.3d at 1111.

Federal Rule of Civil Procedure 60(b) permits the Court to relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is not a matter of right. <u>See</u> <u>Hunter v. Underwood</u>, 362 F.3d 468, 475 (8th Cir. 2004); <u>Easley v. Kirmsee</u>, 382 F.3d 693, 697 (7th Cir. 2004); <u>Carter v. United States</u>, 973 F.2d 1479, 1589 (9th Cir. 1992); <u>Price v. Seydel</u>, 961 F.2d 1470, 1473 (9th Cir. 1992). Rather, it rests in the trial court's sound discretion. <u>See</u> <u>Hunter</u>, 362 F.3d at 475; <u>Easley</u>, 382 F.3d at 697; <u>Carter</u>, 973 F.2d at 1589; <u>Price</u>, 961 F.2d at 1473. It is an extraordinary remedy and is only granted in exceptional circumstances. <u>Wickens v. Shell Oil Co.</u>, 620 F.3d 747, 759 (7th Cir. 2010); <u>Sellers v. Mineta</u>, 350 F.3d 706, 716 (8th Cir. 2003); <u>Servants of Paraclete v. Does</u>, 204 F.4d 1005, 1009 (10th Cir. 2000).

The Court's order denying Defendants' Rules 59(e) and 60(b) motion addressed Defendants' argument that Plaintiff was not entitled to recover any interest based on a waiver theory. (<u>See</u> <u>Ramona</u>, Doc. No. 142.) "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938); <u>see also</u> <u>A&M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004, 1026 (9th Cir. 2001). At trial, Defendants had the burden of proof on the affirmative defense of waiver. Fed. R. Evid. 301; Fed. R. Civil P. 8(c)(1). The judge's role during a nonjury trial is to weigh the evidence, determine the credibility of witnesses, and decide questions of fact as well as issues of law. <u>See</u> <u>Cabrera v. Jakabovitz</u>, 24 F.3d 372, 380 (2d Cir. 1994); <u>S.T.S. Int'l, Ltd. v. Laurel Sea</u>

Transport, Ltd., 932 F.2d 437, 440 (5th Cir. 1991).

The Court did so, concluding that Plaintiff was entitled to recover simple—not compound—interest for the unpaid rental equipment. (Ramona, Doc. No. 112.) The evidence at trial included the equipment rental agreements that included a provision against waiver. (Ramona, Doc. No. 142; Exs. 5, 7-96.) The equipment rental agreements expressly stated that an "[e]xercise of any remedy available to rental Center shall not constitute an election of remedies or a waiver of any additional remedies to which Rental Center may be entitled." (Ramona, Doc. 112, at 7, Exs. 5, 7-96.) The equipment rental agreements also provided that "[a]ny failure of Rental Center to insist upon strict performance by Customer as regards any provision of this Rental Agreement shall not be interpreted as a waiver of Rental Center's rights to demand strict compliance with all other provisions of this Rental Agreement against Customer, or any other person." (Ramona, Ex. 5, 7-96.)

Plaintiff's witnesses did not testify that they intentionally waived Plaintiff's claim to the contractual service charge of 1½% interest. (See Ramona, Doc. Nos. 148, at 50-144; 149, at 1-86, 158-66; 150, at 83-86.)   Plaintiff's witness, Mr. Souza, testified that Ramona's crediting back of any service charges represented a leniency period, but he did not testify that the company had relinquished its right to assess service charges. (Ramona, Doc. No. 150, at 91-92.)   Rather, Plaintiff Ramona assessed the service charges after Defendant Candelaria terminated Otay on June 6, 2008, as permitted under the rental invoices in evidence. (Ramona, Ex. 5, 7-96.)

Defendants' witnesses did not satisfy the burden of proof required for waiver. Defendants' expert witness, Mr. Charles Miller, testified that, in practice, he would be "happy to credit back or waive the service charges" if a customer promptly paid. (Ramona, Doc. No. 150, at 135.)   He testified that crediting back service charges or waiving them is "frequently done." (Ramona, Doc. No. 150, at 135.) Mr. Miller also admitted that in one instance he had agreed to postpone charging a service charge for the entire rental period but would later impose the service charge if the account went to collections and legal action was required. (Ramona,

1    Doc. No. 150, at 136 ll. 6-23.)  Additionally, Mr. Reggie Candelaria, the president of the

2    general contractor—and Defendant—Candelaria Corporation, testified that he did not notify

3    the suppliers and equipment vendors of Otay's deficiencies and did not terminate Otay until

4    June 6, 2008.  (Ramona, Doc. No. 148, at 38.)

5        In weighing the evidence and determining the credibility of the witnesses, the Court

6    could accept all or part or disregard the witnesses' testimony.  See Cabrera v. Jakabovitz, 24

7    F.3d 372, 380 (2d Cir. 1994); S.T.S. Int'l, Ltd. v. Laurel Sea Transport, Ltd., 932 F.2d 437,

8    440 (5th Cir. 1991).  After weighing all the evidence, the Court concluded that Plaintiff did not

9    intentionally waive the right to collect the 1½% service charge.  (See Ramona, Doc. No. 150,

10   at 131-33.)  The Court further concluded that Defendants were bound to pay the amount of the

11   unpaid rental equipment invoices before June 10, 2008, including the contractual 1½% simple

12   interest.  (Ramona, Doc. No. 112.)  The Court ultimately reduced Plaintiff's damages by

13   $39,642.67 by excluding from its award invoices for equipment rental dated June 10, 2008 and

14   after.  (Ramona, Doc. No. 112.)

15       The Court's evaluation of Mr. Miller's testimony in its memorandum decision—that

16   Mr. Miller was critical of the failure to impose timely service charges and that service charges

17   are an effective collection tool—was reasonable.  (See Ramona, Doc. Nos. 112; 150, at 135

18   ll. 5-8.) Mr. Miller explained that it was "very odd" that Plaintiff did not impose timely service

19   charges.  (Ramona, Doc. No. 150, at 135.)   He testified that the service charge was a

20   "collection tool to aid in the collection." (Ramona, Doc. No. 150, at 135.) Mr. Miller admitted

21   that in one instance he had agreed to postpone charging a service charge for the entire rental

22   period but would later impose the service charge if the account went to collections and legal

23   action was required.  (Ramona, Doc. No. 150, at 136 ll. 6-23.)  The Court's characterization

24   in its memorandum decision captures its evaluation of the credibility of Mr. Miller's testimony.

25   Accordingly, the Court's conclusion to deny the motion under Rules 59(e) and 60(b) was

26   reasonable and not a result of bias.

27   ///

28

In its opposition to Defendants' Rules 59(e) and 60(b) motion, Plaintiff urged the Court to deny the motion because Defendants' waiver argument was raised for the first time in Defendants' post-trial motion. (Ramona, Doc. No. 141.)  The Court evaluated the motion on the merits, not on procedural default. (Ramona, Doc. Nos. 141-42.)  Nevertheless, Plaintiff correctly noted that Defendants did not include the waiver defense in their proposed findings of fact and conclusions of law, in their trial brief, in the pretrial order, or in their opening statement or closing argument. (See Ramona, Doc. Nos. 98-99, 141, 148.)  Defendants did not include the waiver defense in their fourteen-page proposed findings of fact and conclusions of law, in their twenty-eight-page trial brief, in the pretrial order,[6] or in their opening statement or closing argument.  (See Ramona, Doc. Nos. 98-99, 148); see also United States v. First Nat. Bank of Circle, 652 F.2d 882, 886 (9th Cir. 1981) ("Unless pretrial orders are honored and enforced, the objectives of the pretrial conference to simplify issues and avoid unnecessary proof by obtaining admissions of fact will be jeopardized if not entirely nullified.  Accordingly, a party need offer no proof at trial as to matters agreed to in the order, nor may a party offer evidence or advance theories at the trial which are not included in the order or which contradict its terms.").

Courts generally decline to grant Rule 60(b) relief when the mistake alleged resulted from the moving party's deliberate and counseled decision.  See Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097, 1100-02 (9th Cir. 2006); see also Eskridge v. Cook Cnty, 577 F.3d 806, 809-10 (7th Cir. 2009); Powell v. Omincom, 497 F.3d 124, 128 (2d Cir. 2007).  There is usually no basis for relief under Federal Rule of Civil Procedure 60(b)(6) when adverse consequences are the result of a party's "free, calculated, and deliberate" trial strategy.  Paul Revere Variable Annuity Ins. v. Zang, 248 F.3d 1, 5-6 (1st Cir. 2001).  An improvident trial decision should not be corrected after the fact by seeking relief under Rule 60(b)(6).  See Ungar v. Palestine Liberation Org., 599 F.3d 79, 85-86 (1st Cir. 2010);  Budget Blinds, Inc.

---

[6] The Court notes that Plaintiff listed as an issue of law: "Whether Plaintiff has the right to recover finance charges under the Credit Application or the Rental Agreements or any or all of its claims of relief." (Ramona, Doc. No. 70, at 11.)

v. White, 536 F.3d 244, 258 (3d Cir. 2008); Paul Revere, 248 F.3d at 5-6.  Consequently, the Court's decision to decline, on the merits, to alter or amend the judgment was reasonable and warranted, and an objective observer would not conclude the Court to be biased or prejudiced against Defendants or Defendants' counsel.

Counsel's argument that the Court demonstrated bias by declining to alter or amend the judgment without his reply does not form a proper basis for recusal.  In its order, the Court, pursuant to its discretion under Local Civil Rule 7.1(d), determined the matter was appropriate for resolution without oral argument, submitted the motion on the parties' papers, and vacated the hearing.  (Doc. No. 142.)  Defendants filed a reply brief on the same day as the Court's order.  (See Ramona, Doc. Nos. 142-43.)  Defendants were not prejudiced by the Court's order, Defendants had the opportunity to file a reply, and a reasonable, objective observer would not view the Court's decision as an indication of bias or prejudice.  (See Ramona, Doc. No. 143.)  Further, Defendants' reply did not persuade the Court that another conclusion should have been reached nor did Defendants move for reconsideration of the Court's order.  Accordingly, a reasonable, objective observer would not conclude the Court's conduct to be partial toward Plaintiff or biased against Defendants or Defendants' counsel.

### 4.    Court's Post-Trial Supersedeas Bond Ruling in Ramona

Counsel additionally argues that the Court's prompt determination of Defendants' motion to stay the judgment pending appeal conditioned on posting a supersedeas bond demonstrated bias against Defendants and Defendants' counsel.  (Technica, Doc. No. 153.)  Counsel's arguments about the Court's ruling and conduct hinge on judicial conduct, rather than on extrajudicial sources or deep-seated antagonism or favoritism.  See Liteky, 510 U.S. at 555-56.  Counsel does not allege that the Court's decision was influenced by outside sources but rather argues that its conduct in the course of the proceedings demonstrated prejudice.  (Technica, Doc. No. 153.)  These are insufficient bases for recusal under Liteky.  See Liteky, 510 U.S. at 555-56.  Therefore, counsel's arguments fail as a matter of law.

///

Moreover, a reasonable, objective observer would not construe the Court's decision as demonstrating bias against Defendants or Defendants' counsel.  Federal Rule of Civil Procedure 62(d) allows for a stay of the execution of a final judgment pending appeal when the moving party posts a supersedeas bond.  Rule 62(d) states that "[i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . .  The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal.  The stay takes effect when the court approves the bond."  Fed. R. Civ. P. 62(d).  Pursuant to this rule, "[d]istrict courts have inherent discretionary authority in setting supersedeas bonds," Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1505 n.1 (9th Cir. 1987), and "broad discretionary power to waive the bond requirement if it sees fit," Townsend v. Holman Consulting Corp., 881 F.2d 788, 796-97 (9th Cir. 1989).  Courts frequently require a supersedeas bond for the amount of the judgment plus interest, costs, and an estimate of any damages attributed to the delay.  12 Moore et al., Moore's Federal Practice § 62.03 (3d ed. 2004).  The Ninth Circuit has also approved imposing a bond that represents the amount of the judgment: "The purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution and a full supersedeas bond should therefore be required."  Rachel, 831 F.2d at 1505 n.1.  When a party wishes a court to "depart from the usual requirement of a full security supersedeas bond," the burden is on the moving party to show reasons for the departure from the normal practice.  Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979).

In light of the prevailing case law, the Court reviewed the motion and the opposition, and determined that it could fairly and properly rule on the motion.  Without a stay of the judgment, Plaintiff's execution of the judgment could potentially proceed.  Here, the Court timely granted Defendants' motion to stay the case.  (Ramona, Doc. Nos. 145, 154.)  Defendants additionally requested to depart from the supersedeas requirement, and the Court declined to do so.  (Ramona, Doc. Nos. 145, 154.)  Further, waiting to rule on the motion could harm Defendants because without a stay and supersedeas bond in place, Plaintiff could execute

on the judgment immediately.  Accordingly, a reasonable, objective observer would not view the Court's decision to promptly grant the stay of the execution without a reply as biased or prejudiced against Defendants.

Additionally, a reasonable, objective observer would perceive that Defendants could have filed a motion for reconsideration if Defendants felt prejudiced by the Court's prompt ruling.  See Fed. R. Civ. P. 54(b) (allowing federal district courts to revisit non-final orders in their discretion).  The Court did not receive a motion for reconsideration from Defendants.  Instead, Defendants filed a motion for clarification.  (Ramona, Doc. No. 155.)  The Court ruled in Defendants' favor, ordering the posting of a supersedeas bond for $399,284.49, the amount of the judgment, not the amount requested by Plaintiff of $499,105.60.  (Ramona, Doc. No. 156.)  Therefore, a reasonable, objective observer would not conclude the Court to be partial toward Plaintiff.

### 5. Court's Ruling on Motion to Amend the Counterclaim and Answer in Technica

Counsel argues that the Court's decision to deny Defendants' motion to amend their counterclaim and answer shortly after the Court was assigned to the case is indicative of the Court's bias.  (Technica, Doc. No. 153.)  Further, counsel argues that the Court declined to adopt Defendants' arguments and reasoning, and instead denied the motion to amend based on Plaintiff Technica's reasoning,[7] demonstrating bias or prejudice against counsel or Defendants.  (Technica, Doc. No. 153.)

As an initial matter, counsel attacks elements of the judicial proceedings and the Court's order, and does not assert that the Court was biased or prejudiced because of an extrajudicial source or deep-seated antagonism or favoritism.  (See Technica, Doc. No. 153.)  Based on the Supreme Court's holding in Liteky, this is an insufficient basis for a recusal request under section 455.  See Liteky, 510 U.S. at 555-56.  Therefore, the Court's ruling does not demonstrate bias of the type explained in Liteky as a proper basis for recusal.  See id.

---

[7] Technica was not a party to the Ramona case.

Additionally, a reasonable, objective observer would not question the Court's impartiality in the matter.  (See Technica, Doc. No. 153.)  This Court was randomly assigned this case after the previously assigned judge recused.  (See Technica, Doc. No. 144.)  When the Court was assigned the case, a motion for leave to file a third amended answer and counterclaim was pending, fully briefed, and submitted on the papers by the former judge on February 1, 2012, pursuant to Local Rule 7.1(d).  (See Technica, Doc. No. 134.)  Additionally, a pretrial conference was calendared for March 15, 2012.[8]  (See Technica, Doc. Nos. 143, 146.)  The Court reviewed the fully briefed motion.  (See Technica, Doc. Nos. 124, 131, 133.)  On March 13, 2012, the Court denied the motion for leave to file a third amended answer and counterclaim.  (Technica, Doc. No. 146.)  After a review of the procedural history of the case, the case management schedule, and the substantive basis for the amendment, the Court denied the amendment to the pleadings in a written order.  (See Technica, Doc. No. 146.)

Rule 16(b) permits a Court to grant leave to amend a pleading after the deadline set in a scheduling order upon good cause.  Fed. R. Civ. P. 16(b).  The standard "primarily considers the diligence of the party seeking the amendment."  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992).  Once good cause is shown, the amendment is analyzed under Rule 15.  Id. at 608-09.  Even if the amendment is analyzed under Rule 15, "[l]eave need not be granted when the amendment . . . would cause the opposing party undue prejudice, is sought in bad faith, constitutes futility or creates undue delay."  Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

In light of the case law, the Court carefully considered Plaintiff's and Defendants' arguments for and against the amended counterclaim, and the Court determined that Defendants had not shown good cause for the late amendment.  (See Technica, Doc. No. 146.)  The prior judge had already ruled in a summary judgment order on June 29, 2010 that Plaintiff could not bring a state law breach of contract claim against Otay because Plaintiff was not

---

[8] The Court notes that the Final Pretrial Conference had been continued from January 24, 2010, to October 3, 2011, to December 5, 2011, to February 6, 2012, to February 16, 2012, to March 15, 2012. (Technica, Doc. Nos. 113, 118, 123, 141, 143.)

licensed in California.  (Technica, Doc. No. 77.)  Defendants filed their motion to file a third

amended counterclaim and answer on December 22, 2011, several months after the judge's

summary judgment order.  (Technica, Doc. No. 124.)  Further, Plaintiff argued that it would

be prejudiced by the late amendment.  (Technica, Doc. No. 146.)  Moreover, the Court

considered that the pre-trial conference was to be held the same week.  (Technica, Doc. No.

146.)  Accordingly, the Court exercised its discretion and denied the late amendment of the

counterclaim and answer because there was not good cause for the late amendment and there

was the potential for prejudice and delay to Plaintiff.  (See Technica, Doc. No. 146.)  In light

of these considerations, a reasonable, objective observer would not question the Court's

impartiality but would view the Court's decision as consistent with federal law, not influenced

by Ramona or extrajudicial sources, not arising from deep-seated favoritism or antagonism,

and absent of bias or prejudice.  See 28 U.S.C. § 455; Liteky, 510 U.S. at 555-56.

## III.    Recusal Under Section 144

### A.    Legal Standard for Section 144

Even if a "judge declines to grant recusal pursuant to section 455(a) & (b)(1), the judge

still must determine the legal sufficiency of the affidavit filed pursuant to section 144."  Sibla,

624 F.2d 864, 868 (9th Cir. 1980).  Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.  Pursuant to 28 U.S.C. § 144, a judge must recuse himself when a party

makes and files a "timely and sufficient" affidavit that the judge "has a personal bias or

prejudice either against him or in favor of any adverse party."  See id.  The challenged judge

must determine first whether the affidavit is legally sufficient and, if so, must refer the motion to another judge for determination.  See id.; see also Sibla, 624 F.2d at 867; United States v. Montecalvo, 545 F.2d 684, 685 (9th Cir. 1976).

        To be legally sufficient, the affidavit "must state facts which if true support the allegation that bias or prejudice stemming from (1) an extrajudicial source (2) may prevent a fair decision on the merits."  United States v. Azhocar, 581 F.2d 735, 739 (9th Cir. 1978); Sibla, 624 F.2d at 869 ("An affidavit filed pursuant to [section 144] is not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source.").  In Liteky, the Supreme Court noted that its analysis of the extrajudicial doctrine, discussed above, is applicable to determining the legal sufficiency of an affidavit filed under section 144.  Liteky, 510 U.S. at 548, 554-55.  Additionally, the affidavit must be made and signed by a party to the litigation.  See Giebe v. Pence, 431 F.2d 942 (9th Cir. 1970) (holding a district court's denial of disqualification proper because affidavit filed in support of the motion was not that of a party to the proceeding); see also Berger v. United States, 255 U.S. 22 (1921); Pomeroy v. Merritt Plaza Nursing Home, Inc., 760 F.2d 654, 658-59 (5th Cir. 1985) ("A court may not grant relief under § 144 if a party's counsel instead of the party executes an affidavit alleging personal bias or prejudice."); Roberts v. Bailar, 625 F.2d 125, 127 (6th Cir. 1980) ("Section 144 expressly requires the 'party' to execute the document."); Martelli v. City of Sonoma, 359 F. Supp. 397 (D.C. Cal. 1973) ("The statute is explicit that the affidavit must be filed by a party to the action.").  An affidavit made by counsel for a party, rather than the party himself, is legally insufficient.  Pomeroy, 760 F.2d at 658-69; Roberts, 625 F.2d at 127; Giebe, 431 F.2d 942 (9th Cir. 1970); Mavis v. Commercial Carriers, Inc., 408 F. Supp. 55, 57 (C.D. Cal. 1975); Martelli, 359 F. Supp. at 399.  In evaluating the legal sufficiency of the affidavit, the judge must accept the facts alleged in the affidavit as true.  Willienbring v. United States, 306 F.2d 944, 945-46 (9th Cir. 1962).

///

**B.    Affidavit Legally Insufficient Under Section 144**

Because recusal is inappropriate under section 455, the Court turns to the affidavit provided by counsel in determining whether it is legally sufficient and thus requires referral to another judge for consideration on the merits. See 28 U.S.C. § 144; Sibla, 624 F.2d at 867; Montecalvo, 545 F.2d at 685. After carefully considering the sufficiency of the affidavit, the Court concludes the affidavit is legally insufficient and thus need not be referred to another judge for determination on the merits. See id.

First, the affidavit was filed and signed by Defendants' counsel, not a party. (See Technica, Doc. Nos. 153, 154.) Under the statute, a legally sufficient section 144 affidavit must be filed by a party, not by counsel. See 28 U.S.C. § 144; Giebe, 431 F.2d 942; see also Berger, 255 U.S. 22; Martelli, 359 F. Supp. 397. Mr. Berens may act as counsel for Defendants, but ultimately the party must state under the oath of an affidavit the reasons for the belief that the bias or prejudice exists. See 28 U.S.C. § 144. Therefore, the affidavit under section 144 is legally insufficient because it was brought by counsel, not by a party to the litigation. See Pomeroy, 760 F.2d at 658-69; Roberts, 625 F.2d at 127; Giebe, 431 F.2d 942 (9th Cir. 1970); Mavis, 408 F. Supp. at 57; Martelli, 359 F. Supp. at 399.

Even if the affidavit were filed and signed by Defendants, it would still be legally insufficient because it rests wholly on the Court's rulings and trial administrative efforts. See Liteky, 510 U.S. at 555-56; see also Pesnell, 543 F.3d at 1044; Holland, 519 F.3d at 914. As the Court held in Liteky, these grounds are inadequate because they all occurred in the course of judicial proceedings and neither relied on knowledge acquired outside the proceedings nor displayed deep-seated and unequivocal antagonism. Id.; see also Pesnell, 543 F.3d at 1044; Holland, 519 F.3d at 914. Counsel's allegations rely on the Court's judicial rulings, its reasoning, and its trial administration. (See Technica, Doc. No. 153); see also Liteky, 510 U.S. 555-56; Pesnell, 543 F.3d at 1044; Holland, 519 F.3d at 914. Therefore, because counsel's allegations are legally insufficient grounds on which to submit a section 144 affidavit, the Court concludes that random referral of the matter to another judge is unnecessary. Sibla, 624

F.2d at 867; <u>Montecalvo</u>, 545 F.2d at 685.  The affidavit is legally insufficient and recusal is unnecessary under section 144.  <u>See</u> 28 U.S.C. § 144.

### Conclusion

For the foregoing reasons, the Court denies Defendants' request for the Court's recusal from this matter under section 455.  The Court also concludes that Defendants' counsel's affidavit under section 144 is legally insufficient.  Therefore, there is no basis for the Court's recusal.

**IT IS SO ORDERED.**

Dated: April 11, 2012

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPY TO:

James D. Crosby
Law Office of James D. Crosby
13400 Sabre Springs Parkway, Suite 200
San Diego, CA 92128
crosby@crosbyattorney.com